## Roxanna Figuereo *vs.* Neila Valverde.

No. 02-P-754.

Middlesex. September 16, 2003. - November 26, 2003.

Present: Beck, Mason, & Doerfer, JJ.

*Insurance,* Motor vehicle personal injury protection benefits. *Motor Vehicle,* Insurance. *Practice, Civil,* Judgment, Motion to amend. *Judgment,* Amendment.

In a civil action for personal injuries that the plaintiff sustained in an automobile accident with the defendant, the judge erred in allowing the defendant's motion to alter or amend the judgment to reduce it by $2,000 to reflect the defendant's exemption from tort liability, to the extent of the plaintiff's personal injury protection (PIP) benefits under her automobile insurance policy, where the plaintiff's insurer had denied her PIP coverage, not for "noncooperation" as that phrase is used in G. L. c. 90, § 34M, but for providing false, material information at the time she acquired or renewed the policy; because the noncooperation exception to the exemption for tort liability set forth in § 34M did not apply, the defendant was not entitled to the statutory exemption. [78-82]

Civil action commenced in the Somerville Division of the District Court Department on January 10, 2000.

The case was tried before *Brian R. Merrick,* J., and a motion to alter or amend the judgment was heard by him.

*Harvey R. Peters* for the defendant.

*Lazar Lowinger* for the plaintiff.

Doerfer, J. A six-person jury in the District Court returned a verdict for the plaintiff, Roxanna Figuereo, in the amount of $5,000 in this action for personal injuries she sustained in an automobile accident with the defendant, Neila Valverde.[1] At the time of the accident both the plaintiff and defendant were

---

[1]This appeal does not raise any issues as to the negligence of the defendant or the amount of damages sustained by the plaintiff that were proximately caused by defendant's negligence.

insured under standard Massachusetts automobile liability policies that included personal injury protection (PIP) benefits. But for the complications we describe, the plaintiff would have received $2,000 in PIP benefits from her insurer,[2] and the defendant would have been not liable in tort to the plaintiff to that extent under G. L. c. 90, § 34M, second par., first sentence. If the plaintiff's insurer had paid $2,000 in PIP benefits to the plaintiff, the plaintiff's insurer would have been able to recover that amount from the defendant's insurer in that amount, since the defendant was found to be at fault. G. L. c. 90, § 34M, fifth par.

The defendant filed a motion to alter or amend the judgment under Mass.R.Civ.P. 59(e), 365 Mass. 827 (1974), to reduce it by $2,000 to reflect her exemption from tort liability, to the extent of the plaintiff's PIP benefits.[3] In response to the defendant's motion, the plaintiff submitted a letter from her insurer, Commerce Insurance Company (Commerce), informing the plaintiff that she had provided false material information in her application for insurance, and therefore she would not be provided with PIP benefits.[4] On the basis of this denial of coverage by Commerce, the plaintiff opposed the reduction of the verdict. The defendant argued, in substance, that she should be entitled to the PIP deduction because the plaintiff's PIP coverage was denied to the plaintiff based on the plaintiff's misconduct and that the defendant should not be deprived of the benefit of an exemption from tort liability where the defendant was not responsible for the plaintiff's loss of PIP coverage.

The trial judge agreed with the defendant and allowed the motion to alter or amend the judgment. On appeal, the Appellate Division of the District Court vacated that decision[5] and ordered the entry of judgment for the plaintiff in the amount of the full $5,000. This appeal followed. We affirm the decision and order of the Appellate Division.

[2]The plaintiff's medical bills exceeded $2,000.

[3]The parties assume that the appropriate mechanism for accomplishing this result is a motion to alter or amend the judgment under Mass.R.Civ.P. 59(e), and we leave that issue unexamined.

[4]We discuss the details of that letter later, in the context of the analysis.

[5]See note 7, *infra*.

*Analysis.* Under G. L. c. 90, § 34M, second par., as inserted by St. 1970, c. 678, § 4:

> "Every owner . . . of a motor vehicle to which personal injury protection benefits apply who would otherwise be liable in tort . . . is hereby made exempt from tort liability for damages . . . *to the extent that the injured party is . . . entitled to recover under those provisions of a [policy] that provide [PIP] benefits*" (emphasis supplied).

The plain meaning of this statute is that if the plaintiff in this case (the "injured party") is *not* entitled to recover under the provisions of a policy that provides PIP benefits, then the defendant (who must also be an owner of a motor vehicle to which PIP benefits apply) is not made exempt from tort liability for damages. See *Chipman* v. *Massachusetts Bay Transp. Authy.*, 366 Mass. 253, 257-259 (1974). See also *Pinnick* v. *Cleary*, 360 Mass. 1, 8 (1971).

There is, however, a further complication injected by the third paragraph of § 34M, which deals with claims for PIP benefits due to the injured party from her PIP insurer. The third paragraph of § 34 deals with such matters as the time within which PIP claims must be made (two years), the need for the injured party to provide the insurer with a written description of the nature and extent of the injuries received, the treatment received and contemplated, and "such other information as may assist in determining the amount due and payable" are delineated. The insurer is authorized to investigate the claims of the insured for PIP benefits, and the insured is required to cooperate in the PIP insurer's investigation, including submission to an independent medical examination, "to assist in determining the amounts due."

The third paragraph of § 34 then concludes, "Noncooperation of an injured party shall be a defense to the insurer in any suit for benefits authorized by this section and failure of an insurer to pay benefits in the event of such noncooperation shall not in any way affect the exemption from tort liability granted herein." Thus we turn to an examination of the grounds upon which the plaintiff's PIP insurer declined to pay her PIP benefits to determine if the "noncooperation" exception applies so as to

preserve the limited exemption from tort liability for the defendant.

The only evidence presented in connection with the defendant's motion to alter or amend judgment was the letter from the PIP insurer, Commerce, to the plaintiff, its insured. In its letter, Commerce denies the plaintiff's claim for PIP benefits based on her provision of "false information, falsifying the date she was first licensed, and by falsifying the state where she was first licensed . . . ." Because of the plaintiff's misrepresentation, Commerce concluded that the plaintiff had (1) violated her insurance contract, and (2) "breached her insurance policy's cooperation clauses and covenants of good faith and fair dealing." Conspicuously absent from the letter is any reference to any failure on the part of the plaintiff to cooperate on the topic of the nature and extent of her injuries, her lost wages, or any details relating to the accident and her claims arising out of the accident. The only recitations in the letter concern her alleged false statements relating to her drivers' licenses in the Dominican Republic and in Massachusetts and that her premiums would have been higher if she had provided accurate information.[6]

From these facts it is clear that Commerce did not deny the plaintiff her PIP benefits based on "noncooperation of an insured" as that phrase is used in G. L. c. 90, § 34M, third

---

[6]The letter recites a cooperation clause in the policy which states, "After an accident or loss, you . . . must cooperate with us in the investigation, settlement, and defense of any claim or lawsuit. Failure to cooperate with us may result in the denial of the claim." The letter contains two conclusory statements that the plaintiff provided false information during the presentation of the claim and also states that she breached the cooperation clause of the policy. But all of the facts recited in the letter relate only to the provision of allegedly false information on the topic of where plaintiff was previously licensed. Compare *Jertson* v. *Hartley*, 342 Mass. 597, 601-602 (1961) (detailing false information that insurance company pointed to as evidence of noncooperation as provided in connection with claim); *Employers' Liab. Assur. Corp.* v. *Vella*, 366 Mass. 651, 654-655 (1975), quoting from *Jertson, supra* (recognizing that "intentional furnishing of false information of a material nature" is breach of cooperation clause and discussing misrepresentations provided during investigation and trial of claim); *Sorensen* v. *Sorensen*, 369 Mass. 350, 364 (1975) (noting that provision of false information could be breach of cooperation clause and highlighting situation of collusion between parent and child in filing of potentially fraudulent claim).

par. Instead, it is clear that Commerce was claiming that the plaintiff breached the contract of insurance by providing false, material information at the time she acquired or renewed the policy and that therefore her claim for PIP benefits would not be paid. On these facts, the insurer does not have the defense to a claim by the plaintiff for PIP benefits based upon "noncooperation." Thus, the noncooperation exception to the "exemption for tort liability granted herein" does not apply. As a result, the defendant is not entitled to the statutory exemption provided for under G. L. c. 90, § 34M.

The defendant argues that she is unfairly penalized by not having her exemption from tort liability preserved where the plaintiff made a material misrepresentation to her insurer, which is a more serious form of misconduct than merely failing to cooperate with her insurer. She urges that we regard the Legislature's omission of language covering this form of denial of benefits is an oversight which is "absurd and unreasonable," and that we should not read these words in the statute literally as fully expressive of the law, citing *Mailhot* v. *Travelers Ins. Co.*, 375 Mass. 342 (1978). The context in which the noncooperation exception appears, however, shows that it relates to noncooperation in the evaluation of a claim for PIP benefits and not to all circumstances that might provide an insurer a defense to claims for benefits under the insurance policy. See G. L. c. 90, § 34M. The general rule of the statute is that if PIP benefits are not available, the exemption from tort liability is not available. The only circumstance chosen by the Legislature to preserve the exemption from tort liability is where the injured party, by her conduct, interferes with a rational evaluation of the nature and extent of her injuries. The evident legislative purpose is to force the resolution of claims for compensation for injuries and losses which are valued below a threshold level into the PIP arena and out of the tort arena, i.e., without the need to establish the fault of another party. Where, as here, the inability of the injured party to receive PIP compensation relates to defects in the way she obtained her policy and not to the way in which she presented her claim, her status as an insured person

within the no-fault system is in jeopardy[7] and she can be required by the Legislature to seek redress in the fault-based system. In such a scenario the plaintiff must prove that the defendant is at fault and has proximately caused her injuries.

The plaintiff's actual right to receive PIP benefits from Commerce was not determined as between the plaintiff and Commerce at trial. Thus that issue, as between them and as far as this record is concerned, is still open. But it was the defendant's burden, as the person seeking a reduction in the verdict, to show that there was a valid PIP policy in force, and the evidence did not support that conclusion. Cf. 11 Wright, Miller & Kane, Federal Practice and Procedure § 2810.1 (1995) (concerning motions to amend judgments). See *Goodrow* v. *Lane Bryant, Inc.*, 432 Mass. 165, 170 (2000) (observing "the party claiming an exemption from the provisions of a statute has the burden to show that it is entitled to the exemption"). Therefore, the defendant must pay the plaintiff the full amount of the judgment.

By the verdict of the jury, the defendant has been determined to be at fault in this motor vehicle accident. If Commerce had paid out the PIP benefits pursuant to the plaintiff's policy, it would be entitled to recover that payment from the defendant's carrier through agreement or arbitration. G. L. c. 90, § 34M, fifth par., final sentence. As noted before, because defendant's carrier paid the full $5,000, the loss rests where it would be under any sequence of events concluding with a finding of the defendant's fault. Therefore, the defendant's concern that the plaintiff could receive a windfall by successfully litigating the coverage issue with Commerce is unfounded. The plaintiff will receive the monetary benefit she would have received under her

---

[7]The Appellate Division analyzed the right of the plaintiff's insurer to void her policy where she had supposedly supplied false information which resulted in reduced premiums, relying on such cases as *Barnstable County Ins. Co.* v. *Gale*, 425 Mass. 126, 128 (1997), and *Hanover Ins. Co.* v. *Leeds*, 42 Mass. App. Ct. 54 (1997). They viewed her situation as one in which her policy had been voided. The letter from Commerce, however, did not purport to rescind or cancel her policy, which would have implicated other statutory hurdles. See G. L. c. 175, § 113A. See also *Espinal* v. *Liberty Mut. Ins. Co.*, 47 Mass. App. Ct. 593, 598 (1999). Instead, Commerce invited the plaintiff's attorney to contact the plaintiff's insurance agency in order to make changes to her policy. We do not rest our decision on any conclusion that her policy was or could have been voided or rescinded.

PIP contract by getting the full amount of the verdict from the defendant (or the defendant's insurer). She took the position in this litigation that she had no PIP coverage. She would not be able to take an inconsistent position and profit thereby in any further litigation with Commerce. Cf. *Furukawa* v. *Arbella Mut. Ins. Co.*, 59 Mass. App. Ct. 142, 144-145 (2003), interpreting *Aetna Cas. & Sur. Co.* v. *Poirier*, 371 Mass. 257, 261 (1976).

We note that, if the plaintiff is responsible for the voiding of her policy, she has not escaped unscathed even though she will recover her full losses after a trial in the old fault-based system. She did not get the benefit under G. L. c. 90, § 34M, of a quick, no-fault reimbursement of her medical and lost wage expenses that she otherwise would have had if her policy had been in force. See *Pinnick* v. *Cleary*, 360 Mass. at 8. Rather, the plaintiff must wait until the conclusion of this litigation to receive reimbursement of expenses that, under § 34M, she would have received as early as thirty days after her loss accrued. See G. L. c. 90, § 34M, fourth par. See also *Fascione* v. *CNA Ins. Cos.*, 435 Mass. 88, 91 (2001). She has also run the risk of proving that the defendant was at fault, which she otherwise would not have had to prove if her PIP coverage had been in force.

*Decision and order of the*
*Appellate Division affirmed.*